**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** | ) | |
| **ANGEL NAVARRO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 6757** |
| | ) | |
| **MIKE ATCHISON, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

An Illinois jury convicted Angel Navarro of first-degree murder.  The trial judge

sentenced him to a prison term of sixty years.  Navarro has petitioned this Court *pro se*

for a writ of habeas corpus under 28 U.S.C. § 2254.  He contends that his trial and

appellate counsel rendered ineffective assistance, he was denied due process, the

prosecution made improper comments during closing argument, and the trial judge

considered improper factors when sentencing him.  For the reasons stated below, the

Court denies Navarro's petition and declines to issue a certificate of appealability.

### Background

Respondent has not provided the Court with trial transcripts in this case.  *See*

*Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (district court need not

review state court transcripts in resolving habeas petition and may rely on state court

factual determinations).  Navarro contends that the state appellate court opinions do not

provide a complete record of the facts and provides his own factual summary with

record citations, but he expressly states that the full transcript need not be filed. Accordingly, the Court's factual summary is taken from the state appellate court opinions, with reference to Navarro's factual summary where appropriate. *Cossel v. Miller*, 229 F.3d 649, 651 (7th Cir. 1999) (state court findings presumed correct unless rebutted with clear and convincing evidence).

## A.    The shooting

Josue Guerra was shot and killed on April 6, 2004 at approximately 8 p.m. on the west side of Chicago. Police arrested Navarro for the shooting.

At trial, the prosecution presented the testimony of four primary witnesses. Artemio Magdaleno testified that he was with Guerra and a number of friends walking to a store. Before reaching the store, they encountered Navarro in a group with five or six other men. The two groups had a confrontational exchange, and then Magdaleno and his group proceeded into the store.

Magdaleno testified that after leaving the store he, Guerra, and their friends continued walking. Magdaleno heard a gunshot and ducked. He testified that he looked in the direction of the shot and saw Navarro firing a gun at him and his friends. Magdaleno said that even though it was somewhat dark, he was able to see Navarro in the light generated by the muzzle flashes of the gun. Magdaleno admitted that several of his friends were standing between him and the shooter and that those friends began running toward him as the shooter began. He stated, however, that they did not interfere with his view of the shooter. Magdaleno eventually ran to his house, which was close by, and he returned to the scene later to see Guerra being loaded into an ambulance.

Heber Garcia lived near the shooting and at the time was unloading his truck. He heard a gunshot and turned and saw Navarro pointing a gun. Garcia then went with his wife into the vestibule of their building. Garcia heard two more gunshots and saw Navarro walking away. Garcia was able to see Navarro clearly and testified that he was wearing a white t-shirt and white pants. Garcia saw Navarro place a gun somewhere in his clothes. Garcia next saw police arrive on the scene and heard them yell at Navarro. Navarro began to run. On cross-examination, Garcia admitted that he had not seen Navarro fire the final two shots and that he was unable to see Navarro for about ten seconds between seeing him fire the first shot and seeing him walk away.

Carlos Colon testified that he lived in a nearby apartment building and was looking out the window at the time of the shooting. He stated that he heard a gunshot and saw Navarro holding a gun. Colon was close by and he stated that the area where Navarro stood was lit by at least two street lights. Colon stated that Navarro was wearing cream sweatpants and a white t-shirt and that he saw Navarro put a gun in the waistband of his pants. Colon also saw police arrive at the scene and Navarro begin to run from then. On cross-examination, Colon admitted that he wore glasses and had pleaded guilty to felony theft more than nine years before. Defense counsel also later called a police detective who stated that Colon had initially told him that he was not looking out the window at first and did not look until after he heard the first shot.

Police officer John Meer testified that he and his partner were on patrol in the area when they heard gunshots at approximately 8:08 p.m. and drove to the area from which they heard them. On reaching the scene, Meer saw Navarro running away while wearing a white t-shirt and white or beige sweatpants. Meer began to chase Navarro

and during the chase saw Navarro pull a gun out of his pants. Meer was only about ten to twenty feet behind Navarro when Navarro turned down a gangway. Meer responded by running down a parallel gangway, losing sight of Navarro.

When Meer emerged from the gangway onto a street, he saw Navarro standing on the curb, but he was now wearing a black hooded sweatshirt. Meer testified on cross-examination that he had not seen Navarro holding a black sweatshirt before he disappeared down the gangway. Meer chased Navarro again and was able to catch and arrest him. Meer searched Navarro and recovered marijuana, but no gun.

Meer took Navarro back to the crime scene. There, police presented him to the three witnesses who all identified him as the shooter. During the show-up, Navarro stood outside a police vehicle, illuminated by either flashlights or floodlights, with his hands handcuffed behind his back. Both Garcia and Colon testified that Navarro was wearing a different darker shirt when police presented him at the show-up than he had worn during the shooting, but they testified that they still recognized him.

Navarro contends that police first had Garcia and Colon stand on opposite sides of a tree, presumably so they could not see each other, and indicate whether Navarro was the shooter. Only after both had identified Navarro as the shooter did Magdaleno come forward as a witness and also indicate that Navarro was the shooter. According to Navarro, police had no idea where Magdaleno was while Garcia and Colon identified him.

Police recovered a loaded handgun from a yard on the same block on which Meer arrested Navarro. Its caliber matched the caliber of three shell casings recovered at the scene of the shooting. Neither the gun nor the casings had fingerprints on them.

Police tested Navarro's hands and sweatpants for gunpowder residue but found none.

One witness recounted facts that suggested that Navarro had not shot Guerra. Luis Diaz testified that he was with Magdaleno and Guerra. Diaz stated that they got into an argument with a man known as Little Danny, that Little Danny was not Navarro, and that he had never seen Navarro before. Diaz saw the shooter, but could not identify him. He testified that the shooter was not Little Danny. According to Navarro, Diaz also testified that the shooter was wearing a dark sweatshirt and beige sweatpants.

**B.    Trial**

Before trial, Navarro's attorney did not move to suppress the show-up identifications made by the witnesses at the scene of the shooting. At trial, during Meer's testimony defense counsel stipulated that Navarro was the man whom Meer had seen run away from the scene of the shooting. Navarro states that the trial judge instructed the jury to accept that stipulation.

In closing argument, defense counsel conceded that Navarro had run from Meer. He argued, however, that Navarro had only done so because he had marijuana and was trying to get away from the danger the shooting represented. Defense counsel emphasized that most witnesses had seen the shooter wearing a white t-shirt and that Navarro had been wearing a dark sweatshirt. Counsel also suggested that Meer saw Navarro holding a cell phone and not a gun, reminding the jury that Navarro's girlfriend had testified that Navarro had called her just before the time of the shooting. Defense counsel also questioned the ability of the witnesses to see the shooter and identify Navarro and argued that Colon should not be believed due to the fact that he had a

felony conviction.  Defense counsel asserted that the subsequent identifications that the witnesses had made of Navarro during the show-up were tainted by the suggestive nature of the show-up, because police presented only a single suspect who was handcuffed and spotlighted.

In its rebuttal closing argument, the prosecution emphasized that Navarro could have put on the dark sweatshirt in an attempt to deceive the police.  The prosecution also stated that Navarro's counsel had conceded that he ran from Meer, and that because witnesses had seen the shooter run from Meer, Navarro must be the shooter. According to Navarro, the prosecution also criticized defense counsel's attempted impeachment of Colon, suggesting that the conviction was too old to be relevant, defense counsel had been trying to embarrass Colon, and defense counsel had not proved various aspects of the conviction even though Colon had admitted that he had been convicted.

The jury convicted Navarro of first-degree murder.  At sentencing, the trial judge discussed Navarro's criminal record but focused on the fact that the shooting was unprovoked and that as a result of the shooting Guerra had died.  The judge imposed a sentence of forty years' imprisonment for the murder conviction and a sentencing enhancement of an additional twenty years because Navarro had personally discharged a firearm during the offense.

## C.     Appeal and post-conviction proceedings

In his direct appeal, Navarro made four arguments:  (1) his trial counsel was constitutionally ineffective when he conceded that Navarro had run from Meer; (2) the

prosecution misstated the law and suggested that defense counsel had an improper motive when criticizing the impeachment of Colon; (3) the trial court improperly considered the lack of provocation and the death of Guerra in imposing a sentence, even though those were elements necessary for the first-degree murder conviction in the first place; and (4) Navarro was entitled to additional credit for the time he had already spent incarcerated. In an amended order filed February 1, 2008, the Illinois Appellate Court rejected the first three arguments but ordered that Navarro receive appropriate credit for the time he had been incarcerated. Navarro filed a petition for leave to appeal (PLA) with the Illinois Supreme Court. His PLA included two arguments. First, he argued that his trial counsel had been constitutionally ineffective for conceding that he had run from Meer, and second, he argued that the trial court had improperly considered the lack of provocation and the death of Guerra when imposing a sentence. The Illinois Supreme Court denied the PLA on May 29, 2008.

Navarro then filed a *pro se* petition for state post-conviction relief. He raised three issues: (1) the statute under which he received the twenty-year sentence enhancement violated the United States and Illinois constitutions; (2) his rights to due process and effective assistance of trial and appellate counsel were violated by the use of evidence from an unduly suggestive show-up identification, which neither trial or appellate counsel argued should be suppressed; and (3) his rights to due process and effective assistance of trial counsel were violated by trial counsel's failure to present any mitigating evidence at the sentencing hearing. The trial judge dismissed the petition as frivolous on January 6, 2009.

Navarro then appealed with the assistance of counsel. He asserted only a single

argument, the alleged unduly suggestive nature of the show-up identification and the failure of trial and appellate counsel to challenge the show-up.  The Illinois Appellate Court affirmed the dismissal of the post-conviction petition on this issue on January 12, 2011.  Navarro then filed a PLA with the Illinois Supreme Court.  He contended that his petition properly "alleged, *inter alia*, that trial and appellate counsel failed to challenge the prejudice of a showup identification by authorities"; the show-up was unduly suggestive; and the appellate court misapplied the standard used when reviewing summary dismissals of post-conviction petitions.  Resp. Ex. M at 4 (brackets and internal quotation marks omitted).  The Illinois Supreme Court denied the PLA on June 29, 2011.

**Discussion**

Navarro makes a number of claims in his habeas corpus petition.  First, he claims that he was denied due process and effective assistance of trial counsel when his trial counsel failed to move to suppress the show-up identification, conceded that he ran from Meer, and failed to present any mitigation evidence at sentencing.  Second, he claims that he was denied effective assistance of appellate counsel because his attorney on direct appeal failed to argue that trial counsel had been ineffective when he did not move to suppress the show-up and failed to produce mitigation evidence.  Navarro also claims that the prosecution violated his constitutional rights when it misstated the law and impugned the motives of defense counsel in relation to defense counsel's impeachment of Colon.  Finally, Navarro contends that the trial court violated his due process rights when it considered the lack of provocation and the death of Guerra during sentencing when those were already elements of the first-degree murder

8

conviction and that the court effectively double-enhanced his sentence.

Respondent contends that the majority of these claims are procedurally defaulted and that the remaining claim fails on the merits.

## A.    Procedural default

"To obtain federal habeas review, a state prisoner must first submit his claims through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009).  Navarro "must have fairly presented the substance of [his] claims to the state courts by articulating both the operative facts and applicable law that [he] claims entitle [him] to relief." *Id.*  "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009) (internal quotation marks omitted).  When a claim is procedurally defaulted, it cannot be reviewed "unless the petitioner can demonstrate both cause for and prejudice from the default or that a miscarriage of justice will occur if [the Court does] not consider his claims." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

Respondent contends that all of Navarro's claims except his ineffective assistance of counsel claim related to counsel's concession that he was running from Meer are defaulted.  In his reply, Navarro concedes that several of his claims were not presented through one full round of state-court review:  (1) his due process claim related to trial counsel's concession that he ran from Meer; (2) all claims related to trial counsel's failure to present mitigation evidence and appellate counsel's failure to argue the same; (3) his claim that the prosecution made an improper closing argument.

These claims are thus procedurally defaulted.  The parties, however, disagree

regarding whether Navarro's federal constitutional claims related to the show-up

identification or trial court's double enhancement of his sentence were presented to the

state courts.

Navarro presented an argument regarding double enhancement of his sentence

to the Illinois Appellate Court and the Illinois Supreme Court on direct appeal.  His

argument, however, was that the trial court violated *state law* by the purported double-

counting of certain factors.  In two briefs to the Illinois Appellate Court, a petition for

rehearing, and the PLA to the Illinois Supreme Court, Navarro never suggested that the

trial court's decision violated the United States Constitution.  Res. Exs. A, C, & E; Pet.

Ex. A.  Instead, Navarro cited a total of five state law cases, none of which analyzed or

were decided on federal law.  His argument was that the state legislature had already

incorporated lack of provocation and death into the sentencing range for first-degree

murder because they were elements of the crime, and thus the sentencing judge could

not consider those factors any further in imposing a sentence within the statutory range.

*E.g.*, Resp. Ex. A at 30–32, 35.

Respondent contends that Navarro did not fairly present any federal claim

related to this issue to the state courts.

> [Courts] use four factors to evaluate whether a petition has fairly
> presented his claim:  1) whether the petitioner relied on federal cases that
> engage in a constitutional analysis; 2) whether the petitioner relied on
> state cases which apply a constitutional analysis to similar facts; 3)
> whether the petitioner framed the claim in terms so particular as to call to
> mind a specific constitutional right; and 4) whether the petitioner alleged a
> pattern of facts that is well within the mainstream of constitutional
> litigation.

*Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (internal quotation marks omitted).

As stated above, Navarro cited no federal cases in his double enhancement argument

to the state courts and none of the five state cases he cited reference federal law. *See*

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a "litigant wishing to raise a federal issue

can easily indicate the federal law basis for his claim . . . by citing in conjunction with

the claim the federal source of law on which he relies or a case deciding such a claim

on federal grounds").

Nor was the argument framed in such a way as to call to mind a constitutional

right. Navarro suggests that the trial court's sentence was based on arbitrary

distinctions that implicate his due process rights. *Chapman v. United States*, 500 U.S.

453, 465 (1991). Lack of provocation and the death of the victim, however, are not

arbitrary reasons to impose or enhance a sentence. *See id.* In addition, Navarro never

contended to the state courts that consideration of provocation and Guerra's death was

arbitrary. Instead, he contended that consideration of those factors was forbidden by

state law because they had already been considered by the state legislature. *See*

*Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992) (due process claims, due to lack

of specificity, are particularly hard to fairly present; petitioner must elaborate federal

nature of claim for state court).

Finally, the fact pattern that Navarro presented is not such that it would be

considered to have been within the mainstream of federal constitutional litigation. *See*

*id.* (reliance on this aspect of the fair presentment rule is successful "in only the most

obvious cases"). Navarro has not cited any cases in which a similar sentencing

consideration by a trial judge violated due process.  Rather, as stated above, he argues only that the sentence was arbitrary.  "If . . . the claim is based on a fact pattern not theretofore commonly thought to involve constitutional constraints, there is usually little reason to believe the courts were alerted to its supposed constitutional nature."  *Id.* The Court finds that none of the factors used to assess whether a claim has been fairly presented exist here.  The Court therefore concludes that Navarro's double enhancement claim is procedurally defaulted.

Respondent also contends that all of Navarro's claims related to the show-up identification are procedurally defaulted.  In his post-conviction petition to the trial court, Navarro presented these claims as a violation of his due process rights, his right to effective assistance of trial counsel, and his right to effective assistance of appellate counsel.  Resp. Ex. G at 38.  In his appeal, however, Navarro appears to have presented claims only for ineffective assistance of trial and appellate counsel.  Resp. Ex. I at 2, 12.  Furthermore, the Illinois Appellate Court addressed the claim as relating only to ineffective assistance of counsel, to avoid the prosecution's argument that any claim related to the show-up itself had been forfeited because it was not raised on direct appeal.  Resp. Ex. 4–5.  Navarro's due process claim has thus been procedurally defaulted.  *See Woods*, 589 F.3d at 373 (state court determination that claim has been forfeited is an independent and adequate state ground for denying federal review; habeas claim is thus procedurally defaulted).

Navarro's ineffective assistance of counsel claims related to the show-up were also presented to the Illinois Supreme Court in his PLA.  There, he stated that trial and appellate counsel failed to challenge the show-up.  He argued that had they done so,

the show-up would have been suppressed and that he was therefore prejudiced by counsel's failure to seek exclusion of this evidence. Resp. Ex. M at 4, 15–19; *see Byers*, 610 F.3d at 986 (petitioner can reformulate claim at different levels of post-conviction proceeding as long as the substance of claim remains the same). Navarro's ineffective assistance of trial and appellate counsel claims were thus presented to the state courts through one full round of appeal and are not procedurally defaulted.

Navarro argues that the Court should excuse the default of the claims it has ruled were defaulted, contending that failure to hear his claims will result in a miscarriage of justice because he is actually innocent. *See Woods*, 589 F.3d at 377. A petitioner asserting actual innocence "must *demonstrate* his innocence. Indeed, he comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." *Id.* (emphasis in original; internal quotation marks, brackets, and citation omitted). "To rebut this presumption, [he] must make a credible claim, supported by new, reliable evidence of his innocence. He must establish that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted).

Navarro has not presented any new evidence that suggests that he is innocent. Rather, he argues that the evidence at trial established his innocence. Additionally, four of Navarro's procedurally defaulted claims relate to sentencing: his claim that the trial court considered improper factors when sentencing and due process and ineffective assistance of trial and appellate counsel claims regarding mitigation evidence. None of these sentencing claims could relate to actual innocence with regard

to the underlying crime. Navarro's other three claims are due process claims related to his trial counsel's concession that he ran from Meer and the introduction of the show-up identification at trial, and the prosecution's allegedly improper closing argument. Even had these three claimed errors not occurred, reasonable jurors could have voted to find Navarro guilty beyond a reasonable doubt. Three witnesses identified Navarro as the shooter. A police officer saw Navarro at the scene and chased him, and two of the witnesses confirmed seeing Navarro run from the police officer. Despite the lack of physical evidence and questions regarding whether and when Navarro changed his shirt, this is ample evidence from which a reasonable juror could find Navarro guilty. Navarro is therefore not entitled to have his procedural defaults excused based on actual innocence.

In sum, the Court concludes that all of Navarro's claims are procedurally defaulted and thus cannot be considered on their merits, except for his ineffective assistance of trial counsel claim related to trial counsel's stipulation that he ran from Meer and his ineffective assistance of trial and appellate counsel claims related to the show-up identification.

Respondent has not briefed the merits of the claims related to the show-up. He requested in his response an opportunity to brief those claims should the Court determine that they are not procedurally defaulted. The answer to this is that respondent already had that opportunity (including three extensions of time) but failed to take advantage of it. The Court thus proceeds to the merits of the remaining claims.

**B.**      **Ineffective assistance of counsel**

A person convicted in state court may obtain a writ of habeas corpus on a claim

that was adjudicated on its merits in state court only if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). "A state court's decision is contrary to clearly established federal law if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Woods,* 589 F.3d at 377 (brackets and internal quotation marks omitted). A decision "is an unreasonable application of clearly established federal law if it correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case." *Id.* at 378 (internal quotation marks omitted). The petitioner must show that the state court's decision "was so erroneous as to be objectively unreasonable." *Id.* (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770 (2011) (internal quotation marks omitted).

A defendant claiming ineffective assistance of counsel must show that his attorney's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is

deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. The defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption . . . that . . . the challenged action might be considered sound trial strategy." *Id.* When a state court has ruled on the merits of a petitioner's ineffective assistance of counsel claim, review is "doubly deferential." *Cullen v. Pinholster*, _ U.S. _,131 S. Ct. 1388 (2011). "[E]ven a strong case for relief [under the *Strickland* standard] does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786.

Navarro presents three ineffective assistance of counsel claims that are not defaulted. First, he claims that trial counsel erred when he conceded that Navarro had run from Meer at the scene of the shooting. Second, he claims that trial counsel erred in failing to move to suppress the show-up identification. Third, he claims that appellate counsel erred in not arguing on direct appeal that trial counsel's failure to move to suppress the show-up was constitutionally ineffective.

### 1. Concession that Navarro ran from Meer

The Illinois Appellate Court considered Navarro's argument that his trial counsel was constitutionally ineffective when he conceded that Navarro had run from Meer. The court concluded that this was a "reasonable trial strategy in light of the State's

16

significant evidence that defendant did run from police officers." Resp. Ex. D at 13. In particular, the court noted that two eyewitnesses, Garcia and Colon, saw Navarro run from the police and Meer also stated that Navarro ran away from him when he arrived at the scene. *Id.* The court stated that defense counsel's trial strategy also involved explaining Navarro's flight as due to the fact that he was carrying marijuana, not because he was the shooter. *Id.* at 13–14.

Navarro contends that defense counsel's strategy was objectively unreasonable because all of the evidence suggested that the shooter and the person running from Meer were the same person. The evidence connecting the shooter and the person who ran, however, was not conclusive. Defense counsel argued that none of the witnesses could have identified the shooter at the time of the shooting because it was dark and because their locations did not allow them to see clearly. *Id.* at 11. Garcia testified that the shooter was the same person as the runner, but he also stated that he had not seen the shooter for about ten seconds while he was hurrying to get inside and away from the shooting. *Id.* at 4. Defense counsel thus reasonably could attempt to establish that Garcia had seen Navarro walking and then running from the police but had confused him with the shooter because he did not see the shooter continuously. Colon, by contrast, stated that he had seen Navarro as the shooter and watched him continuously, but his testimony was subject to considerable impeachment. *Id.* at 4–5. Defense counsel elicited that Colon wore eyeglasses and that he had a felony theft conviction. *Id.* at 5. Later, defense counsel was able to call a police detective who testified that Colon had told him a different story immediately after the shooting, in

which Colon had not seen as much of the shooting.  *Id.*  at 9.  Defense counsel also questioned the validity of all of the witnesses' subsequent identification of Navarro as the shooter by arguing that the show-up procedure used by the police was unduly suggestive.  *Id.* at 11.

For these reasons, defense counsel reasonably could have decided that he should concede that Navarro ran from Meer to maintain credibility with the jury and instead challenge the arguably tenuous links the two witnesses provided between the shooter and the man who ran from Meer.  *See Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (recognizing validity of attorney's strategy of conceding that defendant committed lesser crime in order to maintain credibility with the jury and attempt to avoid conviction for more significant crime).  This case is also unlike the case of *Cave v. Singletary,* 971 F.2d 1513 (11th Cir. 1992), which Navarro has cited.  There, the defense attorney's concession that the defendant had committed robbery meant that, as a matter of law, defendant was also guilty of murder.  *Id.* at 1524–25.  Thus, defense counsel had no ability to argue that defendant was only guilty of the lesser offense, and she also indicated confusion about the law of felony murder.  *Id.* at 1525–26.  In this case, by contrast, defense counsel was able to contend that even though Navarro had run from the police, he was not the shooter and had another reason for running.

Navarro also contends that defense counsel's stipulation made it difficult for him to rely on what Navarro now views at the best evidence of his innocence:  the fact that he was arrested wearing different clothes than the shooter, the lack of physical evidence, and the fact that the witnesses identified him after a suggestive show-up.

18

According to Navarro's own recitation of the facts, however, defense counsel relied on all of these facts in arguing to the jury that Navarro was not guilty. Pet. at 15. Nothing about conceding that Navarro had run from Meer made it more difficult for defense counsel to argue that there was no physical evidence (such as fingerprints or gunpowder residue) to tie Navarro to the shooting. Resp. Ex. D at 8. In addition, the fact that two of the witnesses had seen Navarro before, as defense counsel conceded, may have made the show-up more suggestive. Under defense counsel's apparent theory, Navarro's face was familiar to the witnesses, who then erroneously identified him as the shooter, and not just a bystander, when Navarro was presented in suggestive circumstances, handcuffed and surrounded by police.

As for the difference in clothes, the issue is more nebulous than Navarro contends. According to Navarro, Diaz, a defense witness, described the shooter as wearing a dark sweatshirt, as Navarro was at the time of his arrest. Pet. at 9. Accordingly, defense counsel reasonably might have decided that it was better to concede that Navarro was at the scene but argue that someone else was the shooter than to rely fully on the purported difference in clothing to contend that Navarro had never been at the scene in the first place. Furthermore, both Garcia and Colon acknowledged that the clothing they saw the shooter wearing was different from the clothing they later saw Navarro wearing at the show-up, so that defense counsel was still able to make an argument based on the difference in clothes despite his concession. Resp. Ex. D at 7–8, 10.

In sum, the Court concludes that the Illinois Appellate Court reasonably determined that defense counsel's concession was a reasonable trial strategy and did

not represent objectively deficient performance.  The Court therefore denies relief on the basis of this claim.

## 2.    Show-up identification

Navarro contends that his trial counsel was ineffective for failing to move to suppress the show-up identification and that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness.  The Illinois Appellate Court addressed these claims on the merits in Navarro's appeal from the dismissal of his state post-conviction petition.  The court concluded that defense counsel's failure to move to suppress was not deficient performance because the motion would have been futile, and that in any event Navarro had not been prejudiced because even without the show-up identification as evidence, the remaining evidence against him was "overwhelming." Resp. Ex. L at 6–7.

As the Illinois Appellate Court recognized, if there was no underlying constitutional violation, any motion to suppress would have been futile, and defense counsel would not have been constitutionally ineffective in failing to file the motion. *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004).

> [T]o determine whether the admission of testimony regarding an out of court identification offends the defendant's due process rights, [courts] conduct a two-step analysis.  First, the defendant must establish that the identification procedure was unduly suggestive.  If the defendant establishes this factor, we then must determine whether, under the totality of the circumstances, the identification was nonetheless reliable.

*United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007) (citations omitted).

Ordinarily, show-up (single person) identifications are inherently suggestive, but they can be appropriate and "not unduly suggestive in cases of extraordinary urgency.  One

such extraordinary situation is confirming that an individual apprehended close in time and proximity to the scene of a crime is, in fact, the suspected perpetrator of the crime." *Id.* (show-up appropriate when defendant had been apprehended in area of a crime and show-up occurred less than an hour after crime); *see United States v. Sleet*, 54 F.3d 303, 309–10 (7th Cir. 1995).

The Illinois Appellate Court concluded that the circumstances of the show-up were not unduly suggestive under the circumstances. Resp. Ex. L at 6. The court considered the facts that during the show-up Navarro was in handcuffs and the police shined lights on him, all the witnesses identified Navarro at the same time, and the show-up took place at the scene of the crime, but it concluded that these factors did not make the show-up overly suggestive. *Id.* at 6–7. The court's decision was a reasonable application of the law. The show-up occurred immediately after the shooting, and Meer arrested Navarro very close by. The state court reasonably could conclude that as in *Hawkins*, it made sense for police officers to conduct a show-up to determine whether they had detained the correct person. *Hawkins*, 499 F.3d at 707–08. By doing this, the police could quickly learn whether they had to release Navarro and continue their search, and at the time, the appearance of the shooter was fresh in all of the witnesses' minds. *See United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996).

Navarro does not contend that any show-up would have been unduly suggestive under the circumstances, but he identifies several aspects of the way police conducted the show-up that he believes made it unduly suggestive. In particular, he contends that

the show-up should not have been conducted at the scene of the shooting and with him illuminated by flashlights or floodlights and in handcuffs.  Beyond the very nature of a show-up, however, it is not clear why these factors rendered the circumstances more suggestive.  The show-up, of course, inherently indicated that police suspected that Navarro was the shooter.  Beyond that, however, the fact that Navarro was handcuffed conveyed no extra information about what police thought of him.  He cites the case of *United States v. Wade*, 388 U.S. 218 (1967), where the Court stated, with regard to presenting a defendant alone to a witness while handcuffed, that "[i]t is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police."  *Id.* at 234.  But given the established precedent that under these circumstances the police could present Navarro alone to the witnesses, the state court did not act unreasonably in concluding that this did not make the show-up unduly suggestive.

The same is true with regard to the police shining lights on Navarro during the show-up.  Police were asking the witnesses to look at Navarro and see if he was the shooter they had seen.  The Illinois Appellate Court found that the show-up took place when it was dark outside.  Resp. Ex. L at 7.  It is natural, and not unduly suggestive, that the police would want Navarro to be well lit so that the witnesses could see him clearly.  Navarro takes issue with the court's finding that it was dark, contending that witnesses testified that there were three street lights within thirty feet.  He does not provide any record citations for these statements, however, and defense counsel questioned the ability of the witnesses to see Navarro during the shooting because it was dark.  Resp. Ex. D at 10–11.  In addition, Navarro takes the position that police and

witnesses used flashlights to search for the shell casings from the shooting.  Pet. at 12.

Even if Navarro could show by clear and convincing evidence that the court's finding

that it was dark was incorrect, the point would still remain that shining lights on Navarro

was not any more suggestive than a show-up without lights would have been.

In sum, the Illinois Appellate Court reasonably determined that any motion to

suppress the show-up identifications would have been unsuccessful, so Navarro's trial

counsel was not constitutionally ineffective in failing to move to suppress the

identifications.  For the same reasons, Navarro's appellate counsel was not ineffective

in failing to raise an issue on which Navarro could not have prevailed.  *See Smith v.*

*Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (appellate counsel is ineffective in failing to

raise an issue only when issue is obvious and clearly stronger than issues raised).

## C.      Certificate of appealability

When a district court enters a final judgment adverse to a habeas corpus

petitioner, it must issue or deny a certificate of appealability (COA).  Rule 11(a), Rules

Governing Section 2254 Cases in the United States District Courts.  To obtain a COA, a

petitioner must make "a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2).  The petitioner must show "that reasonable jurists could debate

whether (or . . . agree that) the petition should have been resolved in a different manner

or that the issues presented were adequate to deserve encouragement to proceed

further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks

omitted).  When a district court denies a claim on procedural grounds, the petitioner

must show both that "jurists of reason would find it debatable whether the petition states

a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The majority of Navarro's claims are procedurally defaulted, and reasonable jurists could not debate that fact. Given the deferential standard of review applied to state court merits determinations in a habeas corpus proceeding, the issues the Court addressed on the merits are not close. The Court therefore declines to issue a certificate of appealability.

## Conclusion

For the reasons stated above, the Court denies Navarro's habeas petition [docket no. 1] and declines to issue a certificate of appealability. The Clerk is directed to enter judgment in favor of the respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 21, 2012